IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANNY HARRIS,

        Plaintiff,                                        CV. 04-1325-AS

    v.                                                 FINDINGS AND
                                                                   RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

_____

ASHMANSKAS, Magistrate Judge:

## INTRODUCTION

Plaintiff Danny Harris brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The matter is now before the court on the Commissioner's Motion to Remand for further administrative proceedings (Docket No. 24). The Commissioner concedes that the ALJ's decision

contains legal error and is not supported by substantial evidence, and asserts that there are outstanding issues that the ALJ must address before determining whether or not Harris is disabled. The Commissioner does not concede that the record supports an immediate award of benefits. Harris opposes the Commissioner's Motion, and seeks an immediate award of benefits.

For the reasons that follow, the Commissioner's Motion should be **GRANTED**, and this case should be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

At the time of the Commissioner's final decision, Harris was 51 years old. Tr. 15-20, 212, 218.[1] He is a high school graduate who has worked sporadically over the past thirty years. Tr. 109, 393, 588. However, he has not held a steady job in at least 30 years. Tr. 588. His last three or four jobs were paper routes and other delivery duties, each of which lasted for a few weeks at most. Tr. 109, 393, 588. He has had no relevant work experience in the past 15 years. Tr. 20, 223, 242.

Harris's 1994 application for SSI payments was granted in February 1996. Tr. 15, 21-23, 233. His payments were terminated, however, upon his incarceration in March 2001. Tr. 15, 233. Harris was released from prison on January 7, 2002, Tr. 15, 209-10, and protectively filed an application for SSI payments on January 8, 2002. Tr. 15, 211-15. His alleged disability began on May 1, 1994, due to a brain disorder, intellectual impairment, and back pain. Tr. 15. Harris's 2002 application for SSI was denied upon initial and reconsidered determinations. Tr. 170-73, 174-78, 185-87. In response, Harris requested a hearing in front of an Administrative Law Judge (ALJ), which was held on November 4, 2003. Tr. 577. Harris was represented by his attorney, Alan Graf.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer (Docket No. 8).

Tr. 579-89. Miller A. Garrison, Ph.D., a medical expert (ME), and Elayne Leles, a vocational expert (VE), also appeared and testified. Tr. 589-627. The ALJ, in his January 16, 2004, opinion, found that Harris was capable of performing substantial gainful work and, therefore, was not disabled. Tr. 15-20. The Appeals Council denied Harris's request for review. Tr. 8-10. Thus, the ALJ's opinion is the final decision of the Commissioner. 20 C.F.R. §§ 416.1481, 422.210. Harris now seeks judicial review. 20 C.F.R. § 422.210.

## DISABILITY ANALYSIS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the claimant must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has developed a five-step sequential process for determining whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. In this case, Harris disputes steps three and five of the ALJ's disability analysis.

In step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, disability benefits are denied; if not, the Commissioner proceeds to step two. *Yuckert*, 482 U.S. at 140.

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of

3 - FINDINGS AND RECOMMENDATION

impairments, the disability claim is denied. *Yuckert*, 482 U.S. at 141. If the impairment is severe, the evaluation proceeds to step three. *Id.*

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively determined disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities that the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p, *available at* 1996 WL 374184.

In step four, the Commissioner determines whether the claimant retains the RFC to perform work that he has done in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform the past relevant work, he is not disabled. *Yuckert*, 482 U.S. at 141. If the claimant cannot perform the past relevant work, the inquiry proceeds and the burden shifts to the Commissioner. *See id.* at 142.

In step five, the Commissioner determines whether the claimant can perform other work that exists in the national economy. *Id.*; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The Commissioner must show that a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner can satisfy his burden by eliciting the testimony of a vocational expert

in response to a hypothetical question that sets forth all of the claimant's limitations and restrictions. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. If the Commissioner fails to meet this burden, the claimant is disabled. *Id.*

## THE ALJ's FINDINGS

In denying Harris's application for SSI benefits, the ALJ found that Harris was "capable of performing substantial gainful activity in jobs that exist in significant numbers in the national economy" and, therefore, was not disabled as defined in the Act. Tr. 19-20. Harris does not dispute steps one, two, and four of the ALJ's disability analysis. However, Harris disputes steps three and five.

In step one, the ALJ found that Harris had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 19. In step two, the ALJ found that Harris had severe impairments, including antisocial personality disorder, poly-substance abuse, and malingering. Tr. 16, 19. In step three, the ALJ found that Harris's impairments did not meet or equal the requirements of a listed impairment as described in Appendix I, Subpart P, Social Security Regulations Part 404. Tr. 17, 19. Specifically, the ALJ found that Harris had the following RFC:

> The claimant is able to read and write with the exception of some big words, has functional eyesight and hearing, has a mild memory impairment and a variable ability to maintain attention depending on his level of interest. He can sit for one hour, stand for one hour and walk for one half mile. He can climb twelve stairs and can push/pull twenty pounds for short periods of time. He is anti-social and has a poor work history.

Tr. 18. Harris disputes this finding, and asserts that his impairments meet or equal Listing 12.08 in the Appendix 1 list of impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.08.

5 - FINDINGS AND RECOMMENDATION

In step four, the ALJ found that Harris did not have any past relevant work. Tr. 19, 20. In step five, the ALJ found that Harris, based on his RFC and the VE's testimony, was capable of performing "substantial gainful work activity in the entry-level unskilled jobs of small parts assembly and electric inspector." Tr. 19. In coming to this determination, the ALJ posited the following hypothesis to the VE during the November 4, 2003, hearing:

> Let's assume a man who can read and write short of big words at times. Assume that his eyesight, as corrected by lenses, is functional, his hearing is functional. He has a mild memory impairment and a variable ability to maintain attention depending on the level of interest. . . . . He doesn't drive. . . . . Use of the hands is functional. He can climb a dozen stair steps. Pushing and pulling would be limited to where it'd be – the force required wouldn't be more than 20 pounds and this is for – not for long lengths of time pushing and pulling, fairly short episodes. He can sit – say he can sit for an hour, walk a mile. That's about eight blocks. He can stand – I'm going to ask you to assume an hour. I think the claimant said 15 minutes, but I'm going to ask you to assume an hour on that. *He is antisocial, no question about that, considering his criminal record, but I just don't know how to put that into a functional limitation.* He has a poor work history. Part of that is he works but it's not the kind of work we can talk about. So we'll consider that is not work experience because he wouldn't be hired for that kind of work. All right, use that as a hypothetical. Are there any jobs in the economy that a man under 50, that is, entry-level work that would be within the reach of a hypothetical such as this?

Tr. 616-17 (emphasis added). Harris contends that the ALJ erred by not accounting for his antisocial personality disorder in the hypothetical and, therefore, disputes the ALJ's finding under step five.

## STANDARD FOR REMAND

The Commissioner's denial of benefits will be disturbed only if it is based on legal error or is not supported by substantial evidence. *Andrews*, 53 F.3d at 1039. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of

further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited, and an immediate award of benefits directed where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178. The third prong of this test is actually a subpart of the second. *See id.* at 1178 n.7.

## **DISCUSSION**

Harris argues that the ALJ erred as a matter of law, and that his decision is not supported by substantial evidence. Specifically, Harris asserts that the ALJ incorrectly recounted the opinions of the ME and the examining psychologist, and that the ALJ's hypothetical to the VE failed to account for Harris's diagnosed anti-social personality disorder. Instead, according to Harris, the record is complete and does not need updating, and indicates that the ME and psychologist's opinions reflect that Harris's impairments meet or equal Listing 12.08. In addition, when Harris's attorney revised the ALJ's hypothetical to account for Harris's anti-social personality disorder, the VE indicated Harris would not be able to maintain employment. Thus, this court should find Harris disabled, and immediately award him benefits.

7 - FINDINGS AND RECOMMENDATION

In response, the Commissioner concedes that the ALJ's decision contains legal error, and is not supported by substantial evidence. In particular, the Commissioner determined that the ALJ's evaluation of medical and "other source" opinions, his assessment of Harris's RFC, and his finding that Harris could perform other work are not supported by substantial evidence. Nevertheless, the Commissioner asserts that there are outstanding issues that must be addressed before this court can determine whether or not Harris is disabled and due benefits. Thus, the Commissioner requests that this court remand the case to the ALJ for further proceedings.

Specifically, the Commissioner argues that the ALJ should, on remand: reconsider medical and "other source" opinions; establish a function-by-function RFC; update the record, and obtain a consultant mental status evaluation with psychological testing; further evaluate Harris's mental impairment under the guidelines set forth in 20 C.F.R. § 416.920a; and hold a supplemental hearing to receive additional testimony from a ME and a VE.

Because outstanding issues remain, this court believes that further proceedings will aid the ALJ in correctly determining Harris's disability and benefits status under the Act.

**I.      Outstanding Issues.**

The ALJ should address the following before conclusively determining Harris's disability and benefits status: the reconsideration of medical and "other source" opinions, including those of Dr. Garrison, Dr. Calkins, and Mr. Michelitch; Harris's credibility; a new function-by-function RFC assessment; and a revised hypothetical posed to the VE that properly takes into account Harris's anti-social personality disorder.

### A. The ALJ Should Reconsider Opinion Evidence.

#### 1. Miller A. Garrison, Ph.D.

In finding that Harris's medical impairments did not meet or equal the criteria of any impairments listed in Appendix I, pursuant to step three of the sequential disability analysis, the ALJ relied on Harris's medical records and Dr. Garrison's testimony. Tr. 17, 19. Harris asserts that the ALJ erred because Dr. Garrison effectively opined that Harris's condition met listing 12.08 in Appendix I. Although the Commissioner concedes that the ALJ did not properly evaluate Dr. Garrison's opinions, the Commissioner does not agree with Harris that Dr. Garrison's testimony necessarily leads to a finding of disability.

Dr. Garrison testified that Harris likely had an anti-social personality disorder, and that he had marked limitations in social functioning, activities of daily living, and the ability to stay on task and concentrate. Tr. 596-97, 605, 610-11. An ALJ is not bound by findings made by program psychologists, such as Dr. Garrison, but the ALJ may not ignore these opinions, and must explain the weight given to the opinions in his decision. *See* SSR 96-6p, *available at* 1996 WL 374180. The ALJ referenced Dr. Garrison's opinion as support for his finding that Harris's impairment did not meet or equal an Appendix I listing. Tr. 17. Nonetheless, the ALJ's decision failed to explain the weight given to Dr. Garrison's opinion. *See id.*[2]

The ALJ's failure to address the weight given to Dr. Garrison's opinion becomes more problematic because of an apparent conflict in his testimony. On the one hand, Dr. Garrison noted

---

[2] The ALJ also failed to consider the findings of Dr. Karen Bates-Smith, another program psychologist, whose opinion conflicted with Dr. Garrison's opinion that Harris had marked limitations in his functioning. Tr. 492-502. Dr. Bates-Smith found that Harris only had mild or moderate limitations. Tr. 502. The ALJ should have resolved this conflict in medical testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

inconsistencies in Harris's medical records, and opined that the records contained unreliable information concerning Harris's impairments and limitations. Tr. 590-91. Nonetheless, after questioning by Harris's attorney, Dr. Garrison was comfortable enough to opine that Harris had marked limitations that would adversely affect his daily living activities, and his ability to stay on task and concentrate. Tr. 610-11.

Thus, the ALJ's failure to explain the weight given to Dr. Garrison's opinion precludes a clear determination as to whether Harris's impairments amount to a disability.

### 2. Roderick P. Calkins, Ph.D., and Jon R. Michelitch, M.A.

In addition to Dr. Garrison's opinion, the ALJ considered the opinions of "other sources" such as Dr. Calkins and Mr. Michelitch. Tr. 16, 18. The ALJ stated that, "Dr. Calkins opined that [Harris] was able to work and there is no credible objective medical [evidence] to contradict this opinion." Tr. 18. Harris asserts, and the Commissioner disagrees, that the ALJ misinterpreted Dr. Calkins' opinion, and that a proper interpretation necessarily establishes that Harris's impairments meet or equal Listing 12.08 in Appendix I.

The parties also disagree as to the role of Mr. Michelitch's report in the ALJ's decision. The ALJ noted Mr. Michelitch's opinion that Harris is unemployable, but accorded that opinion little weight. Tr. 18. The ALJ stated that the records from Mr. Michelitch and his colleagues "fail[ed] to give any objective evidence to substantiate any of [Harris's] allegations," and dismissed them as "vague and vicarious." Tr. 18. The ALJ seems to have overlooked mental status examinations by Mr. Michelitch's colleagues, including Timothy A. Connor, Psy.D., Tr. 428-41, and M. Mengis, M.D., Tr. 420-23, and also Dr. Mengis's progress notes. Tr. 410, 417. The ALJ should have considered these records, and should have considered Mr. Michelitch's opinion in the context of

these records.  Doing so may lead the ALJ to a different determination as to the utility of the opinions of Mr. Michelitch and his colleagues.

Thus, the ALJ should resolve whether Dr. Calkins's opinion is that Harris can work, and whether the opinions of Mr. Michelitch and his colleagues contradict Dr. Calkins' opinion.

### B. The ALJ Should Re-Evaluate Harris's Credibility.

The ALJ found that Harris's testimony was not entirely credible.  Tr. 19.  Although Harris does not contest that finding, the Commissioner feels, and this court agrees, that because the ALJ must reconsider opinion evidence, he should also re-evaluate Harris's credibility.

### C. The ALJ Should Reassess Harris's RFC.

The ALJ's reconsideration of the ME and "other source" opinions, and his re-evaluation of Harris's credibility affect Harris's RFC.  Thus, the RFC should be reassessed by the ALJ.

In addition, the ALJ's RFC assessment is itself problematic.  The assessment notes anti-social impairments, but does not consider limitations caused by those impairments.  Tr. 18.  Furthermore, although the ALJ found that Harris's anti-social personality disorder, poly-substance abuse, and malingering were severe mental impairments, Tr. 16, the RFC assessment did not provide any description of limitations in Harris's ability to perform basic mental work activities, such as understanding, carrying-out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921.  In addition, the ALJ's assessment of Harris's ability to perform physical activities such as sitting, standing, and walking did not clearly address Harris's ability to engage in work-related physical activities on a regular and sustained basis during an eight-hour workday.  *See* SSR 96-8p.  Thus, the ALJ should establish a new function-by function RFC for

Harris.

### D. The ALJ Should Obtain New VE Testimony.

Pursuant to step five of the sequential disability analysis, the ALJ posed a hypothetical to the VE that was premised on Harris's RFC assessment. Tr. 616-17. In response, the VE named two jobs that such a hypothetical person could perform. *Id.* The ALJ relied on the VE's testimony to conclude that Harris could perform either of those two jobs, and that Harris therefore was not disabled. Tr. 19. The ALJ's hypothetical was flawed because it failed to consider Harris's anti-social personality disorder. Thus, the VE's response to this flawed hypothetical has no evidentiary value. *See Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

Harris's attorney changed the ALJ's hypothetical in an attempt to account for Harris's anti-social personality disorder. Specifically, counsel asked the VE whether it would affect an individual's ability to sustain any of the jobs the VE named if the VE assumed "the vocational limitation of somebody who was frequently deceitful and manipulative" up to a third of the day on a daily basis. Tr. 619-20. The VE responded that those assumptions "would affect [the individual's] ability to maintain employment." Tr. 620.

Next, Harris's counsel asked about an angry, confrontational individual who would "either get into violent acts or confrontations with people on the job on a regular basis." *Id.* The VE testified that those factors would also affect the individual's ability to maintain employment. *Id.*

A reasonable inference from the VE's testimony is that the VE meant that such assumptions and factors generally would have a negative affect on Harris's ability to maintain employment in the jobs the VE named. Nonetheless, the VE did not clarify the degree to which Harris's ability to maintain those jobs would be affected, and whether Harris would be able to obtain those jobs in the

first place.

Furthermore, the additional limitations Harris's counsel posed to the VE were not premised on evidence in the record and specific to Harris, but rather on the description of an anti-social personality disorder from the *Diagnostic & Statistical Manual of Mental Disorders*, which is not part of the record. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 701-02 (4th ed. Text Revision 2000) (DSM-IV-TR). Harris's counsel tried to link the DSM-IV-TR description to Dr. Garrison's testimony. However, while Dr. Garrison agreed that, according to the DSM-IV-TR, a trait of an antisocial personality disorder is "to make things up, to lie and manipulate, and be deceitful," he did not testify that Harris had that trait or, if he did, to what extent he engaged in that behavior. *See* Tr. 597. The ALJ was not bound to accept as true the assumptions and factors set forth by Harris's counsel in his revised hypothetical question because those assumptions and factors were not supported by substantial evidence. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001); *Magallanes*, 881 F.2d at 756-57.

Thus, the ALJ should attain new VE testimony in response to a hypothetical that properly considers Harris's new RFC and his anti-social personality disorder, as this testimony is necessary to determine whether Harris is able to work.

## **RECOMMENDATION**

In summary, further proceedings will permit the ALJ to: reconsider medical and "other source" opinions, including those of Dr. Garrison, Dr. Calkins, and Mr. Michelitch, and provide rationales explaining the weight given to each of those opinions; re-evaluate Harris's credibility; perform a new function-by-function RFC assessment; and present a revised hypothetical to the VE that properly takes into account Harris's anti-social personality disorder. Remand for corrective

proceedings is appropriate because such proceedings will serve a useful purpose. *Harman*, 211 F.3d at 1178; *Rodriguez*, 876 F.2d at 763.

Accordingly, the Commissioner's Motion should be **GRANTED**, and this case should be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 17, 2005. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 14 days, and the review of the Findings and Recommendation will go under advisement on that date or when the response is filed, whichever occurs first.

Dated this 2nd day of September, 2005.

/s/ Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge